UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) CRIMINAL NO. 17-10376-FDS |
| YANNICK A. MINANG, | ) VIOLATIONS: |
| Defendant. | ) International Money Laundering<br>) (18 U.S.C. § 1956(a)(2)(B)(i))<br>)<br>) Structuring to Avoid Reporting<br>) Requirements<br>) (31 U.S.C. § 5324(a)(3))<br>)<br>) Unlawful Monetary Transaction<br>) (18 U.S.C. § 1957(a))<br>)<br>) Concealment and Avoiding Reporting<br>) Requirement Money Laundering<br>) (18 U.S.C. § 1956(a)(1)(B)(i) and (ii))<br>)<br>) Making a Material False Statement<br>) (18 U.S.C. § 1001)<br>)<br>) Money Laundering Forfeiture Allegation<br>) (18 U.S.C. § 982(a)(1))<br>)<br>) Structuring Forfeiture Allegation<br>) (31 U.S.C. § 5317) |

INDICTMENT

The Grand Jury charges that:

GENERAL ALLEGATIONS

At all times relevant to this Indictment:

    1.    **YANNICK A. MINANG ("MINANG")** was an individual who resided in

1

Framingham and Braintree, Massachusetts.

2. "EO" was an individual who resided in Massachusetts and was an acquaintance of MINANG.

3. Victims 1 and 3 were individuals who resided in California. Victim 2 was an individual who resided in Canada.

### The Bank Secrecy Act

4. The Bank Secrecy Act, including Title 31, United States Code, Section 5313(a) and its related regulations, requires a domestic financial institution that is involved in a transaction for the payment, receipt, or transfer of United States currency in an amount greater than $10,000, to file a Currency Transaction Report ("CTR") for each such transaction, including but not limited to a withdrawal of cash greater than $10,000.

5. When filing a CTR, the financial institution must identify the individual who conducted the transaction and the individual or organization for whom the transaction was completed. The institution must treat multiple transactions as a single transaction if it has knowledge that the transactions are by, or on behalf of, the same person, and result in currency either received or disbursed by the financial institution totaling more than $10,000 during any one business day.

### Victim 1's Transfer of $275,250 to the "Minang Trades Account"

6. On or about June 22, 2017, **MINANG** opened an account at Bank of America ("BOA") in Boston, Massachusetts, account number **** **** 7413 in the name of Yannick A. Minang Sole Proprietorship, doing business as ("DBA") Minang Trades ("the Minang Trades

Account"). Other than the $100 opening deposit, the only deposits into the Minang Trades Account were funds fraudulently obtained from Victim 1, as set forth below.

7. On or about June 30, 2017, Victim 1 received an email from someone impersonating Victim 1's real estate broker. The email instructed Victim 1 to wire $275,250 to the Minang Trades Account as the purported down payment for real estate Victim 1 was purchasing in California.

8. Following these instructions, on or about July 3, 2017, Victim 1 caused $275,250 to be wired from Victim 1's bank account in California to the Minang Trades Account.

9. In fact, the email was not from Victim 1's real estate broker and the money was not used for the real estate transaction described.

10. Instead, after receiving the incoming transfer of $275,250 from Victim 1 on or about July 3, 2017, **MINANG** caused BOA to wire $137,500 of Victim 1's money that same day from the Minang Trades Account to a bank account in the name of a third party at Standard Bank of South Africa in Johannesburg, South Africa.

11. On or about July 5, 2017, **MINANG** withdrew a total of approximately $27,800 from the Minang Trades Account at three different BOA branches in Watertown, Belmont, and Somerville, Massachusetts. The withdrawals took place at the following locations, approximate times, and in the following manner, each below the $10,000 CTR reporting requirement described herein:

| Date | Approximate Time | Withdrawal Amount | Branch Location |
|---|---|---|---|
| 07/05/2017 | 09:16 AM | $9,000.00 | Watertown, MA |

| 07/05/2017 | 09:53 AM | $9,600.00 | Belmont, MA |
| 07/05/2017 | 11:33 AM | $9,300.00 | Somerville, MA |

12. On or about September 22, 2017, **MINANG** falsely told Special Agents of the Federal Bureau of Investigation that the $275,205 he received into his Minang Trades Account on or about July 3, 2017 was an overpayment of a loan he was expecting in the amount of $40,000.

### Victim 2's Transfer of $172,000 into the "O-Trading Account"

13. On or about August 11, 2017, Person A, an individual known to the Grand Jury who is an acquaintance of **MINANG**, opened an account at BOA in Cambridge, Massachusetts, account number **** **** 2565 in the name of a sole proprietorship doing business as "O" Trading ("the O-Trading Account"). Other than the $100 opening deposit, the only deposits into the O-Trading Account were the funds fraudulently obtained from Victim 2, as set forth below.

14. On or about August 24, 2017, Victim 2 received an email from someone impersonating Victim 2's real estate broker. The email instructed Victim 2 to wire a total of $172,000, in two separate wires of $86,000 each, to the O-Trading Account in Massachusetts, purportedly for the purchase of real estate Victim 2 intended to buy in Nevada.

15. Following these instructions, on or about August 24, 2017, Victim 2 caused a total of $172,000, in two separate wires of $86,000 each, to be wired from Victim 2's bank account in Georgia to the O-Trading Account in Massachusetts.

16. In fact, the email was not from Victim 2's real estate broker and the money was not used for the real estate transaction described.

17. On or about August 25, 2017, at a BOA branch in North Waltham, Massachusetts,

MINANG and Person A used the fraud proceeds in the O-Trading Account to purchase a bank check for $45,000 made payable to "Minang Investments."

18. Later that same day, MINANG deposited this same $45,000 cashier's check to his account at Santander Bank, account number ******5565, in the name of "Minang Investments" ("the Minang Investments Account").

**Victim 3's Transfer of $30,000 to the "Minang Escrows Account"**

19. On or about September 22, 2017, Victim 3 received an email from someone impersonating Victim 3's real estate broker. The email instructed Victim 3 to wire a total of $150,000 to three different bank accounts — including $30,000 to an account at Citizens Bank in Massachusetts, account number ******8048, in the name of Minang Escrows ("the Minang Escrows Account") — purportedly for the purchase of real estate.

20. Following these instructions, on or about September 22, 2017, Victim 3 caused $30,000 to be wired from Victim 3's bank account in California to the Minang Escrows Account.

21. In fact, the email was not from Victim 3's real estate broker and the money was not used for the real estate transaction described.

22. On or about September 23, 2017, **MINANG** withdrew a total of approximately $18,500 from the Minang Escrows Account at two different Citizens Bank branches in Dedham and West Roxbury, Massachusetts. The withdrawals took place at the following locations, approximate times, and in the following manner, each below the $10,000 CTR reporting requirement:

5

| Date | Approximate Time | Withdrawal Amount | Branch Location |
|---|---|---|---|
| 09/22/2017 | 11:41 AM | $9,000.00 | Dedham, MA |
| 09/22/2017 | 12:47 PM | $9,500.00 | West Roxbury, MA |

## COUNT ONE
## (18 U.S.C. §§ 1956(a)(2)(B)(i) – International Money Laundering)

23. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

24. On or about July 3, 2017, in the District of Massachusetts and elsewhere,

### YANNICK A. MINANG,

defendant herein, did transport, transmit, and transfer, and attempt to transport, transmit, and transfer funds from a place in the United States to a place outside the United States, that is $137,500 in United States currency sent by wire transfer from the Minang Trades Account at Bank of America in Boston, Massachusetts to an account at Standard Bank of South Africa in Johannesburg, South Africa, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1956(a)(2)(B)(i) and 2.

## COUNT TWO
### (31 U.S.C. § 5324(a)(3) – Structuring to Avoid Reporting Requirements)

25. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

26. On or about July 5, 2017, in the District of Massachusetts and elsewhere,

### YANNICK A. MINANG,

defendant herein, knowingly and for the purpose of evading the reporting requirements of Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, did structure and assist in structuring, and attempt to structure and assist in structuring, transactions with a domestic financial institution, that is: a series of three cash withdrawals, totaling at least $27,800, each at different branch locations at Bank of America.

All in violation of Title 31, United States Code, Section 5324(a)(3) and Title 18, United States Code, Section 2.

## COUNT THREE
## (18 U.S.C. § 1957(a) – Unlawful Monetary Transaction)

27. The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

28. On or about August 25, 2017, in the District of Massachusetts and elsewhere,

### YANNICK A. MINANG,

defendant herein, knowingly engaged and attempted to engage in a monetary transaction affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, the deposit of a $45,000 cashier's check made payable to Minang Investments into the Minang Investments Accounts at Bank of America, such property having been derived from specified unlawful activity, that is, wire fraud in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Sections 1957(a) and 2.

## COUNT FOUR
## (18 U.S.C. § 1956(a)(1)(B)(i) and (ii) –
## Concealment and Avoiding Reporting Requirements Money Laundering)

29.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

30.     On or about September 25, 2017, in the District of Massachusetts and elsewhere,

### YANNICK A. MINANG,

defendant herein, knowing that the property involved in a financial transaction represented the proceeds of some form of unlawful activity, did knowingly conduct and attempt to conduct such a financial transaction affecting interstate and foreign commerce, that is a series of two cash withdrawals, totaling at least $18,500, each at different branch locations at Citizens Bank in Massachusetts, which transaction in fact involved the proceeds of specified unlawful activity, that is wire fraud in violation of Title 18, United States Code, Section 1343, and knowing that the transaction was designed in whole and in part to: (i) conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity and (ii) to avoid a transaction reporting requirement under Federal law.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and (ii) and 2.

## COUNT FIVE
### (18 U.S.C. § 1001(a)(2) – Making a Material False Statement)

31.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 22 of this Indictment and further charges that:

32.     On or about September 22, 2017, in the District of Massachusetts and elsewhere,

### YANNICK A. MINANG,

defendant herein, did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States by stating to Special Agents of the Federal Bureau of Investigation that the $275,205 he received into his Minang Trades Account on or about July 3, 2017 was an overpayment of a loan he was expecting in the amount of $40,000, when in fact MINANG then and there knew that the money was not related to such a loan.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (Title 18, United States Code, Section 982(a)(1))

The Grand Jury further finds probable cause to believe that:

33. Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1956 and 1957, set forth in Counts One, Three and Four of this Indictment,

### YANNICK A. MINANG,

defendant herein, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in the offense, and any property traceable to such property. The property to be forfeited includes, but is not limited to:

    (A)    a sum of money equal to the total amount of money involved in the offense, which may be entered in the form of a joint and several forfeiture money judgment; and

    (B)    all funds on deposit in Santander Bank, account number ******5565, in the name of "Minang Investments" ("the Minang Investments Account").

33. If any of the property described in Paragraph 33 above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendant,

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18 United States Code, Section 982(b)(1),

incorporating Title 21 United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 33.

All pursuant to Title 18, United States Code, Section 982(a)(1).

## STRUCTURING FORFEITURE ALLEGATION
### (Title 31, United States Code, Section 5317)

34. Upon conviction of the offense in violation of Title 31, United States Code, Section 5324(a)(3), set forth in Count Two of this Indictment,

**YANNICK A. MINANG,**

defendant herein, shall forfeit to the United States, pursuant to Title 31, United States Code, Section 5317, all property, real or personal, involved in such offense and any property traceable thereto.

35. If any of the property described in Paragraph 34 above, as being forfeitable pursuant to Title 31, United States Code, Section 5317, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 31, United States Code, Section 5317(c)(1)(B), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of property described in Paragraph 34 above.

All pursuant to Title 31, United States Code, Section 5317.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY

_____
Neil J. Gallagher, Jr.
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS; December 6, 2017

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

a) 2:09 PM

12-6-17